1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| In the matter of the denial of a firearm by FBI Appeal Unit and the California State Firearms Denial Review Unit: | CASE NO. 06cv0124-LAB (BLM) |
|---|---|
| MICHAEL CASEY CARNOHAN , | **ORDER:** |
| Plaintiff, | **(1)  GRANTING DEFENDANT STATE OF CALIFORNIA'S MOTION TO DISMISS;** |
| vs. | **(2)  GRANTING DEFENDANT UNITED STATES' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; and** |
| The UNITED STATES and THE STATE OF CALIFORNIA, and Does 1-100, | **(3)  REJECTING PLAINTIFF'S PURPORTED MOTION *IN LIMINE*** |
| Defendants. | [Dkt Nos. 10, 12, 31] |

This matter is before the court on defendant State of California's ("State") Motion To Dismiss and defendant the United States' Motion To Dismiss And For Summary Judgment of plaintiff Michael Casey Carnohan's ("Carnohan") Complaint, captioned "A Civil Action For Loss Of Property." Carnohan, proceeding *pro se*, alleges federal and state agencies have wrongfully prevented him from owning a firearm. Carnohan filed an Opposition to each Motion. Each defendant filed a Reply. Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues appropriate for decision on the papers and without oral argument. For the reasons discussed below, the State's Motion is **GRANTED** and the United States' Motion is **GRANTED**.

1

06cv0124

1      **I.       BACKGROUND**

2              As recited in the Complaint and documented in Exhibits to the Complaint, Carnohan purchased

3      a firearm from a sporting goods store on January 13, 2004.  He failed the required background check,

4      so was not permitted to take possession.  The gun dealer received a letter from the state Department

5      of Justice, Firearms Division, instructing the gun not be released to Carnohan because records indicate

6      he is a person not eligible to possess a firearm.  Compl. Exh. A.  Carnohan disputed the state agency's

7      conclusion his commitment to a mental health facility in 1999, pursuant to CAL. WELF. & INST. CODE

8      § 5250 ("Section 5250"), warranted a firearm ownership restriction under the Gun Control Act, 18

9      U.S.C. § 922(g)(4).  He unsuccessfully appealed that decision to the  Federal Bureau of Investigation's

10     ("FBI") National Instant Criminal Background Check System ("NICS") division in September 2004.

11     Compl. Exh. B.

12             Carnohan  filed a federal lawsuit in March 2005 attempting to overturn the FBI's finding that

13     denied him firearm ownership.  He named as defendants the United States, the FBI Appeal Unit, the

14     California Firearms Denial Unit, and the State of California, seeking relief from the ban and

15     compensatory damages.  The court approved his voluntarily dismissal of that action without prejudice

16     after the federal defendants moved to dismiss and for summary judgment in June 2005.  Compl. pp.

17     8-9.  In May 2005, Carnohan filed both a federal claim under the Federal Tort Claims Act, 28 U.S.C.

18     §§ 2671-2680 ("FTCA"), and a state claim with the Government Claims Branch.  Compl. Exhs. F, C.

19     He relied on the constitutional right to bear arms, among other things.  He included a claim for

20     $582.00 in compensatory damages "computed per receipt of weapon purchased."  Compl. Exh. C, pp.

21     15-17.  The State Control Board notified him by letter dated July 26, 2005 that it lacked jurisdiction

22     to consider his claim because the entity that allegedly caused his damages was the FBI through its

23     background checks system.  In addition, the claim was rejected as untimely.  Compl. Exh. D.

24             In a letter dated January 9, 2006, the FBI denied Carnohan's FTCA claim as not compensable,

25     on two grounds.  Compl. Exh. G.  "First, the FTCA does not provide relief for claims alleging a

26     violation of Constitutional rights.  28 U.S.C. § 1346(b)."  Id. p. 53.  Second, while the FTCA is the

27     exclusive remedy for torts committed by a federal employee acting within the scope of employment,

28                                                              2                                        06cv0124

1   Carnohan presented "no evidence of negligence or a wrongful act or omission on the part of any

2   employee of the FBI that would support" a FTCA claim, nor any evidence of an intentional tort. Id.

3        Carnohan refiled his federal lawsuit on January 23, 2006.  He contends his confinement in a

4   mental health facility pursuant to a CAL. WELF. & INST. CODE § 5250 ("Section 5250") 14-day hold

5   in October 1999, the basis for the denial of authorization for him to possess a gun, was involuntary for

6   only a couple of days.  He also argues the commitment order from  Dr. Stephen Cole. M.D. with the

7   San Diego County Health And Human Services Agency was inappropriate and in error.  For those

8   reasons, he argues he should not be precluded from gun ownership, no 14-day hold under Section 5250

9   should have the consequence of a lifetime prohibition against owning a firearm, and 18 U.S.C. § 922

10  (the Gun Control Act) does not support the agencies' denial.  He seeks injunctive relief to permit him

11  to possess the gun he purchased and compensatory damages of $12,000 against the State and $12,000

12  against the United States for a two-year loss of use of "his property."   Compl. p. 18.

13       Carnohan alleges two causes of action:  a First Cause of Action based on a purported

14  "misapplication" of 18 U.S.C. § 922(g)(4) ("(g) It shall be unlawful for any person--. . .(4) who has

15  been . . . committed to a mental institution" to receive or possess firearms), and a Second Cause of

16  Action alleging the government violated of 28 U.S.C. § 1346(b) (according exclusive jurisdiction to

17  the district courts of civil actions on claims against the United States for money damages actions as

18  the Federal Tort Claims Act ("FTCA")).  He summarizes his Complaint contentions:  possession of

19  a firearm he purchased "has been unlawfully withheld  from him as a consequence of the denial of a

20  Handgun Certificate by the State of California Firearms Denial Review Unit ('Firearms Unit') and the

21  FBI Appeals Unit ('FBI')" due to their alleged "misinterpretation" of 18 U.S.C. § 922 as applying to

22  a "[California Welfare and Institutions Code §] 5250 14 day hold entered in error by Dr. Cole in the

23  Plaintiff's records for County Mental Health in San Diego California, in October 1999."  Compl. p. 8.

24  He identifies the "wrongful act" of the government under 28 U.S.C. § 1346(b) as having "interpreted

25  and applied interstate commerce law 18 U.S.C. 922(e)(4) improperly to Plaintiff as a 'lifetime

26  restriction' against owning a firearm." Compl.  p. 17.

27  //

28                                                                                               06cv0124

1    The State government defendant moves to dismiss on the ground its sovereign immunity

2  precludes Carnohan's suit.  The federal government defendant moves to dismiss and for summary

3  judgment on grounds Carnohan fails to state a claim on which relief can be granted under the FTCA,

4  and the administrative record demonstrates their entitlement to summary judgment as a matter of law

5  because Carnohan's commitment under Section 5250 on a Section 5150 hold is an involuntary

6  commitment disqualifying him from possessing a firearm under 18 U.S.C. § 922(g)(4) without

7  durational limitation.

8  **II.      DISCUSSION**

9        **A.      Legal Standards**

10              **1.      Motions To Dismiss**

11    A motion to dismiss under FED.R.CIV.P. ("Rule") 12(b)(6) tests the sufficiency of the

12  complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal of a claim under this Rule

13  is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support

14  of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

15  Navarro, 250 F.3d at 732.  Dismissal is warranted where the complaint lacks a cognizable legal theory.

16  Robertson v. Dean Witter Reynolds, Inc.,749 F.2d 530, 534 (9th Cir. 1984); *see* Neitzke v. Williams,

17  490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a

18  dispositive issue of law").  Alternatively, a complaint may be dismissed where it presents a cognizable

19  legal theory yet fails to plead essential facts under that theory.  Robertson, 749 F.2d at 534.

20    In reviewing a Rule 12(b)(6) motion to dismiss, the court must assume the truth of all  factual

21  allegations and must construe them in the light most favorable to the nonmoving party, including all

22  reasonable inferences to be drawn from the facts alleged.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

23  337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are

24  cast in the form of factual allegations.  Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987);

25  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  In deciding the motion, the court

26  may consider the facts alleged in the complaint, documents attached to the complaint, documents

27  relied upon but not attached to the complaint when authenticity is not contested, and matters of which

28                                          4                                          06cv0124

1  the court takes judicial notice. Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir. 1998); Branch

2  v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) *overruled on other grounds in* Galbraith v. County of

3  Santa Clara, 307 F.3d 1119 (9th Cir. 2002). Leave to amend is ordinarily denied only when it is clear

4  the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Systems,

5  Inc., 957 F.2d 655, 658 (9th Cir. 1992).

6  **2.      Motions For Summary Judgment**

7  Summary judgment is proper if the pleadings, depositions, answers to interrogatories and

8  admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any

9  material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c); Celotex

10  Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party shows there is an absence of evidence

11  to support the non-moving party's claims, the burden shifts to the party resisting the motion to "set

12  forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc.

13  477 U.S. 242, 256(1986). "A material issue of fact is one that affects the outcome of the litigation and

14  requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677

15  F.2d 1301, 1305-1306 (9th Cir. 1982). In summary adjudication proceedings, the court does not make

16  credibility determinations or weigh conflicting evidence, as those are determinations for the trier of

17  fact. Anderson, 477 U.S. at 249. Rather, the Court considers the evidence in the light most favorable

18  to the non-moving party. Id. at 255.

19  To satisfy the shifted burden, the nonmoving party must establish, beyond the pleadings, that

20  there is a genuine issue for trial. Celotex, 477 U.S. at 324; Taylor v. List, 880 F.2d 1040, 1045 (9th

21  Cir. 1989). To successfully rebut a properly supported motion, the nonmoving party "must point to

22  some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable

23  inference made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]."

24  Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000), *citing* Rule 56, Celotex,

25  477 U.S. at 323, and Anderson, 477  U.S. at 249.   "If reasonable minds could differ," the motion

26  should be denied. Anderson, 477 U.S. at 250-251. However, summary judgment must be entered "if,

27  under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

28

06cv0124

1

### B.     State's Motion To Dismiss

2      The State moves for dismissal on grounds this court lacks jurisdiction to decide the dispute and

3 for failure to state a claim upon which relief can be granted.  It argues the Eleventh Amendment to the

4 United States Constitution bars an action for damages against a state in federal court without the state's

5 consent:  "The Judicial power of the United States shall not be construed to extend to any suit in law

6 or equity, commenced or prosecuted against one of the United States, by citizens of another state, or

7 by Citizens or Subjects of any Foreign State."  It is well settled that protection extends to lawsuits

8 against a state by its own citizens. *See* Hans v. Louisiana, 134 U.S. 1, 15 (1890); Pennhurst State

9 School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Kimel v. Florida Bd. of Regents, 528 U.S.

10 62, 72-73 (2000).  The Eleventh Amendment prevents federal courts from exercising jurisdiction in

11 cases where judgments would be paid directly out of state treasury funds.  Hess v. Port Authority

12 Trans-Hudson Corp., 513 U.S. 30, 48 (1994); *see* Riggle v. California, 577 F.2d 579, 585 (9th Cir.

13 1978) ("A state may waive immunity from suit in its own courts [for instance, by enacting legislation

14 such as the California Tort Claims Act] without thereby waiving its Eleventh Amendment immunity

15 from suit in federal courts").

16      Carnohan opposes the State's Motion on grounds the Eleventh Amendment is "excepted" under

17 42 U.S.C. § 1983 and under 28 U.S.C. § 1331.  However, Carnohan has not stated a 42 U.S.C. § 1983

18 cause of action.  In addition, as noted by the State, Congress did not abrogate state sovereign immunity

19 in enacting Section 1983. *See* Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 71 (1989)

20 ("Congress in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity;"

21 and "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"); *see*

22 *also* Kentucky v. Graham, 473 U.S. 159, 169 n. 17 (1985).  Similarly. the jurisdictional provision of

23 28 U.S. C. § 1331 merely accords federal courts jurisdiction to hear cases arising under federal law,

24 mirroring the language found in Article III, section 2 of the Constitution establishing the scope of

25 federal court jurisdiction.  Eleventh Amendment immunity is a *limitation* on Article III jurisdiction.

26 Pennhurst State School & Hospital, 465 U.S. at 98 ("In short, the principle of sovereign immunity is

27 a constitutional limitation on the federal judicial power established in Art. III").

28

06cv0124

1    In this lawsuit, Carnohan seeks money damages against the State of California. The State has

2  not consented to federal jurisdiction in these circumstances. The Eleventh Amendment bars his claim.

3  The State's Motion To Dismiss is accordingly **GRANTED**.

4         **C.     United States' Motion To Dismiss And For Summary Judgment**

5              **1.     Motion To Dismiss**

6    The United States moves for dismissal, contending to the extent the Complaint can be

7  construed as a claim under the FTCA, it fails to state a claim upon which relief can be granted.

8  Carnohan's Second Cause of Action invokes the FTCA to redress the denial of his alleged "loss of use

9  and enjoyment of" his property interest in owning a firearm, for which he seeks compensatory damages

10  in the amount of $12,000.00 from the United States. Compl. ¶ 17. The United States argues he was

11  lawfully and properly denied ownership of a firearm under the Gun Control Act, and his claim is not

12  cognizable under the FTCA. Mot. 12:16-21. Moreover, the government asserts even if the claim were

13  cognizable, FTCA claims for damages must be in a "sum certain" (28 C.F.R. § 14.2(a)), and Carnohan

14  stated the "sum certain" in the administrative proceeding as $582.00, so that any FTCA damages

15  would be limited to that amount. *See* McNeil v. United States, 508 U.S. 106, 108 n.2 (1993)

16  ("[p]ursuant to 28 U.S.C. § 2675(b), a claimant is barred from seeking in federal court 'any sum in

17  excess of the amount of the claim presented to the federal agency'") (citation omitted).

18    Carnohan attached and relies on the content of multiple exhibits to his Complaint. Neither side

19  contests the authenticity of those documents. Accordingly, the court may properly consider them in

20  deciding a Motion To Dismiss. Parrino,146 F.3d at 705-06; Branch, 14 F.3d at 453-54. The exhibits

21  substantiate Carnohan appealed to the FBI the state agency's denial of the firearm transfer. On

22  December 27, 2004, the FBI upheld the California DOJ's denial, applying 18 U.S.C. § 922(g)(4), and

23  advised Carnohan of procedures he could use to submit documentation to nullify the FBI's decision

24  or to apply to the California DOJ to correct the record. Carnohan provided additional documentation

25  in support of his appeal, but the FBI again sustained the California DOJ's denial based on the federal

26  firearms disability codified at 18 U.S.C. § 922(g)(4), *i.e.*, a person "who has been committed to a

27  mental institution," explaining to Carnohan that commitment pursuant to Section 5250 is involuntary.

28

1   The FBI again referred Carnohan to the California DOJ if he had information to show he was

2   involuntarily committed in error, stating until his records were corrected and received by the FBI

3   directly from the state agency, it could take no further action on his claims.[1]  Carnohan characterizes

4   the decision to block his ownership of a firearm as a misapplication of the gun control statute.

5          "The FTCA acts as a waiver of the United States' traditional sovereign immunity for certain

6   torts committed by its employees." Delta Savings Bank v. United States, 265 F.3d 1017, 1024 (9th

7   Cir. 2001).  Under the FTCA, "[t]he United States shall be liable, . . . relating to tort claims, in the

8   same manner and to the same extend as a private individual under like circumstances." 28 U.S.C. §

9   2674.  However, sovereign immunity prevents suits against the United States without its consent, and

10  the consent must be unequivocally manifested in the plain language of the statute, with the waiver of

11  sovereign immunity extending "unambiguously to such money claims." Lane v. Pena, 518 U.S. 187,

12  192 (1996), *citing* United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992).  The United States

13  summarizes Carnohan's FTCA claim as alleging "the FBI breached a duty of care when it 'improperly

14  applied 18 U.S.C. § 922 to [Carnohan's] circumstance.'" Mot. P&A 13:12-13, quoting Compl. p. 17

15  ("The 'wrongful act' of the government was that it interpreted and applied interstate commerce law 18

16  U.S.C. 922[(g)(4)] improperly to [Carnohan] as a 'lifetime restriction' against owning a firearm").

17  However, "the source of substantive liability under the FTCA" in its reference to "the law of the place"

18  (28 U.S.C. § 1346(b)) has consistently been held to mean "law of the State." FDIC v. Meyer, 510 U.S.

19  471, 477-78 (1994).  "The breach of a duty created by federal law is not, by itself, actionable under the

20  FTCA." Love v. United States, 60 F.3d 642, 644 (9th Cir. 1995).  Carnohan needed to base his tort

21  claim on California state tort law. Delta Savings Bank, 265 F.3d at 1025; *see* Lutz v. United States,

22  685 F.2d 1178, 1184 (9th Cir. 1982) (source of duty under FTCA must be state law, not military base

23  regulation).  Instead, Carnohan bases his tort claim upon alleged misuse or misapplication of a federal

24  statute, defeating his FTCA cause of action.

25

26          [1]   By letter dated April 6, 2005, the FBI had notified Carnohan that until the record was modified by
the state agency reporting the mental health confinement underlying the NICS rejection of his certification
27  to own a firearm, the FBI would take no further action.  Compl. Exh. E.

28                                                  8                                          06cv0124

1    Contrary to Carnohan's allegations, the record reveals no "misapplication" of the gun control

2 legislation.  Carnohan does not dispute in principle "the authority of the United States or the State of

3 California to regulate and control the ownership of handguns by citizens in California." Opp. 2:14-16.

4 He opposes the United States' motions by characterizing his Complaint as presenting the question

5 "whether the language of 18 USC 922(e)(4) can be applied to prevent a citizen from lifetime

6 ownership of a handgun." Opp. 2:6-9. In particular, he articulates the issue to be decided as "whether

7 the language in 18 USC 922(e)(4), namely '. . . [c]ommited to a mental institution' constitutes a

8 dispositive permissive construction" in his circumstances. Id. 2:8-10.

9    As traced in the federal defendants' Motion, in reliance on Carnohan's exhibits, the NICS

10 applied federal gun control legislation and regulations (*i.e.*, 18 U.S.C.§ 922, 27 C.F.R. § 478.11

11 (2005)) to the record of Carnohan's Section 5250 certification for confinement to a mental health

12 facility, an event the government contends precludes him from lawfully possessing a firearm.  Federal

13 policy and gun control statutes reflect the determination that persons with a history of mental

14 disturbances should not have access to weapons. *See* United States v. Dorsch, 363 F.3d 784, 787 (8th

15 Cir. 2004) ("One of the purposes of enacting the federal firearms ban was to establish uniformity in

16 determinations of whether a person is within a category of persons prohibited from possessing

17 firearms.  Once we determine that a defendant has been committed to a mental institution, state

18 legislative intent is irrelevant").

19    The ATF regulation associated with implementing 18 U.S.C. § 922(g) criminalizing possession

20 of a firearm by any person who has been committed to a mental institution, defines the term  to

21 encompass only involuntary commitments:

22    **A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority**.  The term
23    includes a commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as drug use. **The**
24    **term does *not include* a person in a mental institution for observation or a *voluntary admission* to a mental institution**.

25
   27 C.F.R. § 478.11 (2005) (emphasis added).

26
   //

27

28                                                   9                                          06cv0124

The California DOJ applied 18 U.S.C. § 922(g) to deny the transfer of the firearm Carnohan because commitments pursuant to CAL. WELF. & INST. CODE § 5250 are involuntary. That section provides, in pertinent part (emphasis added):

> If a person is **detained** for 72 hours under the provisions of Article I (commencing with Section 5150) or under court order for evaluation pursuant to Article 2 (commencing with Section 5200) or Article 3 (commencing with Section 5225) and has **received an evaluation**, he or she may be **certified** for not more than 14 days of intensive treatment related to the mental disorder or impairment by chronic alcoholism under the following conditions:
>
> (a) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and has **found the** person is, as a result of mental disorder or impairment by chronic alcoholism, **a danger to others, or to himself or herself, or gravely disabled**. . . .

By its terms, detention under Section 5250 is involuntary. *See* Section 5250(c) ("The person has been advised of the need for, **but has not been willing or able to accept, treatment on a voluntary basis**") (emphasis added). A Section 5250 detention is also, by its own terms, for intensive treatment of a mental illness. *See* Bragg v. Valdez, 111 Cal.App.4th 421, 426, 429-30 (2003). Carnohan would have the court construe his post-certification "request" for "voluntary" confinement as trumping the record of his involuntary admission under Section 5250 two days earlier and as converting the required and unambiguous prior finding of "danger" to self and others "as a result of mental disorder or impairment" to detention simply for benign assessment or observation. As a matter of law, Carnohan offers no authority to support that theory of his case. The administrative record supports as the only reasonable construction that Carnohan was "committed" to the mental institution on a 14-day hold after Section 5250 certification.

Carnohan must and does concede he was certified for a Section 5250 commitment. He attempts to circumvent the legal import of that fact by suggesting he could unilaterally convert the formal, involuntary commitment into a voluntary commitment outside the sway of 18 U.S.C. § 922 merely by making that request during the course of his involuntary confinement, and without any evidence the request was granted. He describes his circumstances as "having been admitted to a mental hospital under a 5250 14 day hold that was subsequently **changed** two days later **by the Plaintiff** to a Request

06cv0124

1   for Voluntary Admission." Opp. 2:10-12 (emphasis added).  On that basis, he takes issue with the

2   United States' construction of his 5250 hold as satisfying the "commitment to a mental institution"

3   criterion in 18 U.S.C. § 922(g)(4) justifying a ban on his subsequent ownership of a firearm and urges

4   the court to "disregard" that argument. Id. 2:21-23.  However, the record he provides demonstrates

5   not only that the commitment  was certified, not voluntary.  Moreover, the record reflects he was *re-*

6   *certified* for  involuntary commitment under Section 5250 "as being a danger to others and gravely

7   disabled" *after* he made his Request For Voluntary Commitment.   *See* Compl. Exh. J p. 63 (Dr.

8   Stephen Cole, M.D. Letter).

9          Carnohan also argues the Section 5250 commitment certification was entered through in error

10   or misunderstanding by his certifying physician.  His Complaint Exhibit J is a June 24, 2005 letter

11   from the attending physician at the time of the October 1999 commitment, Dr. Cole.  Carnohan wants

12   the court to construe the Section 5250 commitment Dr. Cole unequivocally describes in that letter as

13   involuntary into a "voluntary" commitment outside the scope of the gun control prohibition, on

14   grounds two days into the forced confinement he *asked* to remain y on a voluntary bases, purportedly

15   "nullifying" the agencies' findings in support of denying him authorization to posses a firearm under

16   18 U.S.C. § 922(g).  However, Dr. Cole substantiates he had Carnohan "admitted to the San Diego

17   County Psychiatric Hospital on 9/23/99 with a 5150 hold as being a danger to others and gravely

18   disturbed," and Carnohan was "certified for a 14-day hospitalization" *twice* "as being a danger to others

19   and gravely disturbed." Compl. Exh. J at page 61.  Similarly, Carnohan's argument that a Section 5250

20   hold is simply "designed to provide observation and treatment of a patient," thus purportedly outside

21   the scope of the "committed to a mental institution" element of 27 C.F.R. § 478.11 firearm possession

22   exclusion, is without merit. Opp. p. 3.  By its terms, a Section 5250 commitment is for "intensive

23   treatment" for mental illness.

24          As summarized by the United States, from the foregoing authority and an undisputed record:

25   "an involuntary admission to a mental institution in compliance with California law constitutes a

26   commitment  for  purposes  of  the  federal  firearms  ban,  and,  thus,  Carnohan  is  precluded  from

27   possessing a firearm" as a matter of law. Mot. 9:21-23.  The court concurs on this record Carnohan

28                                                    11                                          06cv0124

1   has not stated a claim upon which relief can be granted and is persuaded any leave to amend the

2   Complaint would be futile.  The regulations implementing 18 U.S.C. § 922(g) to preclude firearm

3   possession by certain persons set no limitation on the duration of the prohibition.

4       The government also argues dismissal and summary judgment are proper because Carnohan

5   can name no Doe defendants, in consideration of the immunity provision of the Gun Control Act

6   codified at 18 U.S.C. § 922(t)(6):

7           Neither a local government nor an employee of the Federal Government
8           or of any State or local government, responsible for providing
        information to the national instant criminal background check system
        shall be liable in an action at law for damages --
9

10           (A) for failure to prevent the sale or transfer of a firearm to a person
        whose receipt or possession of the firearm is unlawful under this
        section; or
11

12           (B) for preventing such a sale or transfer to a person who may lawfully
        receive or possess a firearm.

13   Moreover, the defendant Does are defined in the Complaint as individuals acting in their

14   official capacities. *See* Compl. ¶¶ 6, 7.  The Brady Act, 18 U.S.C. § 925A (emphasis added), identifies

15   political entities as the only proper defendants: "Any person . . . may bring an action **against the State**

16   **or political subdivision** responsible for providing the erroneous information, or responsible for

17   denying the transfer, or against the United States, as the case may be, for an order directing that the

18   **erroneous information be corrected** or that the transfer be approved."  In addition, leave to sue is

19   restricted to obtaining an order to correct erroneous information.  Carnohan has not raised any

20   reasonable inference the classification of his commitment as "involuntary" is erroneous.

21       Finally, the United States debunks Carnohan's suggested inference he has a constitutionally

22   protected property right under the Second Amendment to own the firearm he purchased.  The Second

23   Amendment prohibits the Government from infringing the right "to keep and bear arms." Comp. p. 6.

24   However, Carnohan reads the Second Amendment too broadly. *See* United States v. Miller, 307 U.S.

25   174, 178 (1939).  Even were a constitutional right to possess a firearm is conferred on individuals,

26   Carnohan's FTCA legal theory provides no remedy for constitutional torts. *See* FDIC v. Meyer, 510

27   U.S. 471, 478 (1994).  The only other avenue to liability suggested by Carnohan's pleading --

28     06cv0124

interference with a contractual right to own a firearm (*see* Compl. pp. 18- 20 alleging the Government "delayed rightful ownership of [his] property" that "he purchased") -- is also barred by the FTCA, 28 U.S.C. § 2680(h), expressly foreclosing claims brought under the FTCA "arising out of . . . interference with contractual rights."[2]   The United States' Motion To Dismiss is accordingly **GRANTED**.

### 2.   Motion For Summary Judgment

The United States makes an adequate and unrefuted showing of entitlement to summary judgment on the theories and record presented, as Carnohan has identified no triable issue of material fact and the applicable law compels judgment in favor of the United States.[3]   The United States presents detailed evidence in the form of a competent Declaration regarding the NICS process, and the application of the background check in Carnohan's case, in support of its showing of entitlement to judgment as a matter of law.[4]   The system regulates the transfer of firearms from Federal Firearms

---

[2]   Carnohan reprises that inference in his Opposition:  "Although the government prevented the Plaintiff from taking possession of the subject firearm, the Plaintiff paid value for the firearm, was given a receipt, and has all the rights of ownership of the subject firearm ascribed to property except licensing for use. . . . Ownership occurs at the point of sale of any personal property."  Opp. 8:5-9.  He should have contract remedies against the gun dealer if the dealer kept his money and the gun after his possession was foreclosed as unlawful.

[3]   The United States contends that Carnohan's Complaint is more properly construed as an action under 18 U.S.C. § 925A, a statutory provision providing a judicial remedy for persons denied a firearm due either to reliance on erroneous information about the person provided by state or federal entities, or who was not prohibited from receipt of a firearm under § 922(g) or (n), rather than as a FTCA action.  P&A 1:25-2:2. Carnohan rejects that construction:  "[N]othing requires the Plaintiff to seek remedy from Federal or State statute under 18 U.S.C. 925A.  The US has no authority to presume the Plaintiff must do so.  The Plaintiff is free to file under any applicable tort liability, and he has done so by filing under FTCA."  Opp. 8:231-24.  A plaintiff is master of his own pleading, and the court decides these motions on the theories pled, with the observation that, as Carnohan appears to acknowledge, he could not successfully proceed under 18 U.S.C. § 925A.

[4]   The detail of the NICS system and process to determine an individual's "eligibility to possess or receive a firearm pursuant to the Brady Handgun Violence Prevention Act (Brady Act), Title 18, United States Code, (U.S.C.), § 922(t)(1) and the Gun Control Act, Title 18 U.S.C. § 922(g) and (n) and state law, as well as the procedural history of Carnohan's background check, are traced in the Declaration of Fanny L. Haslebacher, Esq.  Ms. Haslebacher is an attorney employed by the FBI whose duties include providing guidance to the NICS and serving as its custodian of records.  She authenticates the records pertaining to Carnohan's NICS transaction number.  Carnohan does not challenge the accuracy of the affidavit contents. However, he objects that Haslebacher's presentation is voluminous, distracts with "every permutation and exception imaginable, for processing a handgun certificate, or licensing a citizen to own a handgun in

1  Licensees ("FFL") (*i.e.*, persons licensed by the federal Bureau of Alcohol, Tobacco, Firearms and

2  Explosives as manufacturers, dealers, or importers of firearms) to non-licensed persons and was

3  implemented to comply with the 1993 Brady Handgun Violence Prevention Act.  *See* P&As pp. 2-3;

4  Haslebacher Decl.  The United States Attorney General delegated to the FBI the authority to perform

5  that function.  Under FBI regulations, these background checks may be conducted either by the FBI

6  or by a state or local law enforcement agency acting as an intermediary between an FFL and the FBI.

7  P&A's 2:16-22; Haslebacher Decl.  The California Department of Justice is designated in this state as

8  the contact point for FFLs' requests for background checks before they may transfer any firearm to a

9  non-licensed individual.  Mot. 2:22-3:32.  The United States' explanation of the statutory scheme, the

10  complying review process that was followed in Carnohan's case, and its appropriate construction of

11  a Section 5250 involuntary commitment to a mental institution, such as Carnohan's in 1999, as an

12

13  California," creating a "snow storm" tactic with "diverse and irrelevant argument" he contends the court should
ignore.  Opp. p. 5.  The court properly considers pertinent portions of the Declaration as admissible evidence
14  in support of a summary judgment motion.  Carnohan does not refute Haslebacher's substantiation, with
citations to the agency records provided: Carnohan attempted to purchase a handgun from a California Federal
15  Firearms Licensee (FFL) on January 13, 2004; a subsequent background check conducted by the California
DOJ revealed he had been previously involuntarily committed to a mental institution for intensive treatment
16  under the CAL. WELF. & INST. CODE § 5250; the California DOJ denied the transfer on that basis, but under
a section of that Code alluding to a Section 5250 certification for a period of five years; Carnohan appealed
17  to the California DOJ citing the passage of the five year state prohibition period; the California DOJ
subsequently upheld the denial on federal grounds (18 U.S.C. § 922(g)(4)) rather than state law grounds;
18  Carnohan appealed to the FBI; on December 27, 2004, the FBI upheld the California DOJ's denial of a firearm
under federal law, in particular the prohibitive criteria under 18 U.S.C. § 922(g)(4) for a person who has been
19  committed to a mental institution, but advised Carnohan of procedures, among others,  to submit certified
documents that could nullify the FBI's denial decision or could challenge the accuracy of the record on which
20  the FBI based denial by applying to the original submitting agency (*i.e.*, the California DOJ) for correction of
the record; Carnohan's additional documentation in support of his appeal, submitted January 13-14, 2005, with
21  the FBI again sustaining, on February 2, 2005, the California DOJ denial based on the federal firearms
disability in 18 U.S.C. § 922(g)(4), *i.e.*, a person who has been committed to a mental institution, in recited
22  reliance on state records demonstrating Carnohan had undergone a Section 5250 involuntary commitment
sufficient to subject him to the federal firearm prohibition of Section 922(g)(4), but inviting him to submit to
23  the California DOJ any information he had to demonstrate he was involuntarily committed in error, but that
the FBI could take no further action until his records were corrected by the state agency and the corrected
24  records received from the agency by the FBI; Carnohan wrote to the FBI on February 11, 2005 to inquire
regarding the status of his appeal; the FBI advised him on April 6, 2005 that the NICS section appeal services
25  had received no notification from California that its record had been modified, so no further action would be
taken by the FBI; and based on the administrative record it has, the FBI maintains it properly determined
26  Carnohan was subject to a federal firearms disability under 18 U.S.C. § 922(g)(4) for having been "committed
to a mental institution," and properly sustained the California DOJ's denial of possession of a firearm as
27  prohibited under federal law.  Haslebacher Decl. ¶¶ 16-23.

28
06cv0124

1    event foreclosing his certification to own a firearm, shifted the burden to Carnohan to create a triable

2    issue of material fact on the issue of the nature (voluntary or involuntary) of his commitment.  As

3    discussed above, the only evidence he produces in purported support of that dispositive element is the

4    June 24, 2005 letter from Dr. Cole, on County of San Diego Health And Human Services Agency

5    letterhead and signed by him.  Carnohan characterizes the contents of that letter as demonstrating Dr.

6    Cole erred and had recorded the hospital admission as involuntary solely for his own convenience.

7    The actual contents do not support Carnohan's interpretation. The letter provides, in its entirety,:

8              Dear Mr. Carnohan:

9              This is in response to your letter dated June 12, 2005.  After review of
              your medical records, the documentation confirms the following:
10
              • You were admitted to the San Diego County Psychiatric Hospital on
11             9/23/99 with a 5150 hold as being a danger to others and gravely
              disabled.
12
              • On 9/26/99, you were certified for a 14-day hospitalization.
13
              • On 9/28/99 after 2 days of treatment, you signed a Request for
14             Voluntary Admission.

15             • On 9/29/99, you were again certified as being a danger to others and
              gravely disabled.
16
              • On 10/7/99, a Temporary Conservator was appointed to you.
17
              I understand your need and interest in developing a hobby, however the
18             documentation during your hospital stay supports my decisions.

19   Compl. Exh. J, p. 61.

20          Moreover, Carnohan attempts no explanation how the *second* certification for involuntary

21   confinement Dr. Cole substantiates, *after* Carnohan's request that his admission be voluntary and the

22   appointment of a temporary conservator about ten days later supports a "voluntary commitment"

23   inference.  He  offers no evidence that he was granted a reclassification of his commitment from

24   involuntary to voluntary in response to his request. On the contrary, Dr. Cole's letter reflects that the

25   day after that request, Carnohan was again found to be a danger to others and himself, warranting

26   continuance of the compulsion associated with involuntary commitments.

27   //

28                                          15                                    06cv0124

1    The government has shown a complete absence of evidence to support Carnohan's claims,

2  making summary judgment appropriate. *See* Celotex, 477 U.S. at 325. The court finds the three "facts

3  in controversy" Carnohan identifies as purportedly precluding summary judgment are either

4  immaterial, unsupported by any evidence, contrary to the evidence before the court, or are actually

5  conclusions of law.[5]  None is adequate to meet his shifted burden to avoid summary judgment.

6  Carnohan has provided no Declaration or affidavit in support of his bare allegations and arguments.

7  Dr. Cole's letter does not satisfy his shifted burden to raise a triable issue of fact on the voluntariness

8  of his certified commitment, on the allegation of "error" in the record, or of any inadvertence in Dr.

9  Cole's intent to compel Carnohan's 1999 confinement.  The purpose of Section 5250 holds is

10 unequivocally to obtain treatment for severe mental health episodes of persons found to be in serious

11 difficulty under Section 5150, not for simple assessment at the request of the patient.  Accordingly,

12 applying the 18 U.S.C. § 922 and implementing regulations, Carnohan was properly denied possession

13 of a firearm as a matter of law, warranting summary judgment in favor of defendant the United States.

14       **D.    Carnohan's Purported Motion *In Limine***

15       After defendants' motions were fully briefed, Carnohan presented a purported "Motion *In*

16 *Limine*" objecting under FED.R.EVID. 403 to "statements, representations, and argument" that he has

17 been committed to a mental institution and any bipolar diagnosis as prejudicial, conclusory, and

18 irrelevant. Dkt No. 31.  The court rejects the purported "Motion *In Limine*" as immaterial to its

19 decision on defendants' dispositive motions. In deciding motions to dismiss and motions for summary

20 judgment, the court resolves no factual disputes and makes no factual findings.  The court disregards

21 as immaterial to these motions the underlying condition or cause of Carnohan's 1999 confinement in

22 a psychiatric hospital.  The fact and record of the commitment itself are the relevant considerations in

23 assessing whether his Complaint states a claim and whether summary judgment for defendants is

24

25       [5] Carnohan lists: "(1) The definition of 'commitment' is a fact in controversy. The application of the
   term 'commitment' to a temporary 5250 hold is in controversy. The issue of whether a temporary 5250 hold
26 constitutes 'commitment to an institution' is a triable issue of fact;" "(2) The Plaintiff was never committed to
   a mental institution. . . .;" "(3) The AG's conclusion that the Plaintiff is a 'person with a history of mental
27 disturbances [who should not nave] access to weapons' is false, unsupported by fact, and a triable issue of fact."
   Opp. 7:9-23.

28                                   16                              06cv0124

1  proper.  The court confines its considerations to the Complaint allegations, materials attached to the

2  Complaint, and competent evidence the court is permitted to consider under Rule 12(b)(6) or Rule 56

3  standards.  The Motion *In Limine* is **REJECTED**.

4  **III.    CONCLUSION**

5          For the foregoing reasons, **IT IS HEREBY ORDERED**:

6          1.       Defendant State of California's Motion To Dismiss is **GRANTED**, with prejudice.

7          2.       Defendant United States' Motion To Dismiss is **GRANTED**, with prejudice, and

8  judgment on the merits in its favor shall be entered, constituting a **GRANT** of its Motion For

9  Summary Judgment.

10         3.       Carnohan's Motion *In Limine* is **REJECTED**.

11         **IT IS SO ORDERED**.

12  DATED:  December 20, 2006

13

14         **HONORABLE LARRY ALAN BURNS**
           United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          17                                          06cv0124